UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TWO BRANCH MARINA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 4:07CV1017 CDP |
| WESTERN HERITAGE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT WESTERN HERITAGE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Western Heritage Insurance Company ("Western Heritage"), pursuant to E.D.Mo.L.R. 7-4.01, and in support of its accompanying motion for summary judgment on the Plaintiff's "breach of contract" and "vexatious refusal" claims asserted in the Petition filed by Plaintiff Two Branch Marina ("Two Branch"), states as follows:

### I.   INTRODUCTION AND FACTUAL BACKGROUND

As a matter of law, the clear language of Plaintiff Two Branch's Policy precludes its claim for coverage set forth in the Petition. In its Petition, Plaintiff claims that its boat dock collapsed as a result of wind damage. Despite these claims, there is no evidence that Plaintiff can produce which would bring the property loss within the coverage provided for under the Policy. Plaintiff has no evidence of, and cannot otherwise prove, that the minor winds that accompanied the November 2006 snow and ice storm constituted a "windstorm" under the Policy. Even in the event that the Court determines that the winds were a "windstorm," Plaintiff still cannot establish that the winds were the direct and immediate cause of the collapse of the Two Branch Marina. The overwhelming and undisputed evidence clearly establishes that Two Branch Marina collapsed under the weight of ice and snow. Because neither ice or snow is a

"Covered Cause of Loss" under the Policy, there is no coverage for Plaintiff's claim.

## THE NOVEMBER 2006 WINTER ICE STORM

In November 2006, Missouri was struck by the worst winter weather event to strike the state since January, 1999. The "very powerful early season winter storm produced significant amounts of snow and ice across much of the middle of the country." *See* Exhibit A, NOAA's Report, *Heavy Snow and Significant Icing Event*, attached to Defendant's Motion for Summary Judgment. Like "hundreds of other docks" throughout the greater St. Charles area, the roofs at Two Branch Marina collapsed under the weight of the massive ice and snow accumulation. *See* Exhibit O attached hereto, Fox News Report, *Dozens of Boats Submerged in St. Charles*. According to the National Oceanic and Atmospheric Administration ("NOAA"), the "accumulation of sleet and freezing rain in excess of two inches was common across eastern Missouri." *See* Exhibit L, Certified NOAA Meteorological Reports, attached to Defendant's Motion for Summary Judgment.

## PLAINTIFF'S CLAIM DENIED AS OUTSIDE COVERAGE

On December 7, 2006, Plaintiff filed a Property Loss Notice stating that the Two Branch Marina docks were damaged due to "ice and snow storm." *See* Exhibit D, Property Loss Notice, attached to Defendant's Motion for Summary Judgment. Plaintiff was subsequently informed that ice and snow were not covered losses under the Policy. Nevertheless, a comprehensive investigation into the cause of the collapse was conducted by Defendant, which revealed that the collapse was the direct result of the weight of ice and snow accumulation on the dock roofs. Because ice, snow and sleet were not covered causes of loss under Plaintiff's Policy, on February 16, 2007, Defendant Western Heritage notified Plaintiff that its claim for damage was denied. *See* Exhibit G, denial letter, attached to Defendant's Motion for Summary Judgment.

Following the denial, Plaintiff quickly retreated from its position that "ice and snow storm" caused the collapse, and for the first time in a letter dated March 15, 2007, claimed to be

"assured that without the wind, which was over 25 mph with gusts of 35 mph, that Two Branch's docks would have held." *See* Exhibit H, letter from M. Schultz, attached to Defendant's Motion for Summary Judgment. In a letter dated April 23, 2007, Defendant Western Heritage reiterated its coverage position, but invited Plaintiff to provide expert reports and photographs for review and consideration. *See* Exhibit J, letter from Leslie Schappucci to M. Schultz, attached to Defendant's Motion for Summary Judgment. Instead of providing evidence or expert reports, on May 2, 2007, Plaintiff responded by filing a lawsuit alleging *inter alia* that Western Heritage failed to pay the claim pursuant to the policy terms and that it was vexatious in its denial. *See* Exhibit K attached to Defendant's Motion for Summary Judgment.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact, and the moving party is entitled to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c). The issue is not whether there is any factual dispute, but whether the record reveals a genuine dispute as to those facts that could actually affect the outcome of the lawsuit. *See, e.g., Carter v. St. Louis University*, 167 F.3d 398-401 (8th Cir. 1999). Rule 56(c) mandates the entry of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The non-moving party "may not rest upon the mere allegations or denials of the [non-moving] party's pleadings, but the [non-moving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

3

### III.   ARGUMENT

*1.   Plaintiff's claim for breach of contract fails as a matter of law.*

In its Petition, Plaintiff advances a variety of erroneous claims in attempting to establish coverage under the Policy. The clear language of the Policy, and the evidence established in this case, clearly demonstrate that the collapse was not the result of a covered loss. First, the Policy does not provide coverage for damage sustained as a result of snow and ice. Second, the winds during the November 2006 storm did not constitute a "Windstorm" under the Policy, and therefore was not a covered cause of loss. Third, even if the winds were a "Windstorm" under the Policy, they did not cause the collapse of the docks.

### (a)   The Policy Does Not Provide Coverage For Damage Caused by Ice, Snow or Sleet.

Missouri adheres to the general rule that the insured has the burden of proving that the loss and damages claimed are covered by the general liability or other insuring provisions, while the insurer has the burden of proving that any exclusion upon which it relies is applicable. *See, e.g., Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.,* 964 F.2d 759, 761 (8th Cir. 1992) (*"Nat'l Union II"*); *Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.,* 756 F. Supp. 1232, 1238 (E.D. Mo. 1991) (*"Nat'l Union I"*); *Taylor-Morley-Simon, Inc. v. Mich. Mut. Ins. Co.,* 645 F. Supp. 596, 599 (E.D. Mo. 1986), *aff'd,* 822 F.2d 1093 (8th Cir. 1987).

Western Heritage Insurance Company issued policy number SCP0596354 (the "Policy") to Two Branch Marina, Inc. c/o John Kjar for the period of February 23, 2006, to February 23, 2007. *See* Exhibit C attached to Defendant's Motion for Summary Judgment. The Policy provided Commercial Property Coverage for "direct physical loss of or damage to Covered Property at the premises…caused by or resulting from any Covered Cause of Loss" as defined in the Policy. *See* Exhibit C, Policy, Coverage, A, attached to Defendant's Motion for Summary Judgment.

4

Under the Policy, a Covered Cause of Loss means: "Windstorm or Hail, but not including: (a) frost or cold weather; (b) ice (other than hail), snow or sleet, whether driven by wind or not; (c) loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters." *See* Exhibit C, Policy, Causes of Loss, A(4), attached to Defendant's Motion for Summary Judgment.

Accordingly, in order to prevail on its claim, Plaintiff must either establish that the collapse was the result of a "Windstorm" or "Hail." There is no evidence to support either position, and therefore, Plaintiff's claim must fail as a matter of law.

(b)     **The November 2006 Winter Storm was NOT a Windstorm.**

Other than unsubstantiated claims contained in its Petition, Plaintiff cannot provide any evidence to support its position that the November 2006 winds constituted a "windstorm," or that wind caused the collapse of Two Branch Marina. The term "windstorm" in a policy means "winds of unusual violence, and is something more than ordinary gusts or wind or current of air no matter how long continued…and must assume aspects of a 'storm,' that is, an outburst of tumultuous force." *Schaffer v. Northern Assur. Co. Ltd.*, 177 S.W.2d 688 (Mo. App. 1944).

Despite a lack of any evidence indicating the same, Plaintiff claims that "it was the wind of such force and violence to the relatively small amount of accumulated ice and snow that caused Two Branch's docks to be destroyed." *See* Exhibit B, Petition, ¶¶ 3, attached to Defendant's Motion for Summary Judgment. Plaintiff further claims that the winds at Two Branch were "over twenty-nine (29) mph, with gusts of forty-four (44) mph" and that "the average wind speed was approximately 8.3 mph." *See* Exhibit B, Petition, Preliminary Statement, ¶ 4, attached to Defendant's Motion for Summary Judgment. According to Plaintiff's

5

Petition, these winds caused the collapse of the dock.

The wind speeds cited by Plaintiff as evidence of a "violent" windstorm fail in the face of the evidence. Indeed, the wind speeds cited by Plaintiff fall far below the average wind speeds recorded in the area of the collapse in the ten months leading up to the ice storm. *See* Exhibit L, Certified NOAA Meteorological Reports, attached to Defendant's Motion for Summary Judgment. Specifically, in the ten months prior to the storm, the average wind speed in the area was 9.2 miles per hour. *Id.* Plaintiff admits that the average wind speed during November, 2006 was only 8.3 miles per hour. *See Petition*, Preliminary Statement. Likewise, in the ten months prior to the storm, the average wind speed gusts (winds of five seconds or more) were 45.7 miles per hour. *Id.* The average wind speed gusts during the storm were only 44 miles per hour. Finally, in the ten months prior to the storm, the average sustained wind speed (wind of two minutes or more) was 34.9 miles per hour. *Id.* The average sustained wind speed during the storm was only 29 miles per hour. All recorded categories of wind speeds unequivocally demonstrate that the storm winds were, at best, less than average.

While the Policy does not specifically define the term "windstorm," there can be no ambiguity as to the meaning of the term under Missouri law. The meaning of the term "windstorm" contained within a casualty insurance policy has been consistently held by Missouri Courts to mean "a wind of unusual violence, and is something more than ordinary gusts of wind or current of air no matter how long continued, and need not have the violence or twirling or whirling features of a cyclone or tornado, but it must assume aspects of 'a storm." *Schaeffer v. Northern Assur. Co. Ltd.*, 177 S.W.2d 688 (Mo. App. 1944); *Brown v. Pennsylvania Fire Ins. Co., Phil.*, 263 S.W.2d 893 (Mo. App. 1954 (The term "windstorm" is a simple term and is defined by Webster as "'a storm characterized by high wind with little or no precipitation.'")

The Policy does not provide coverage for winds of all strengths and speeds. The fact that

winds existed at the time of the ice storm does not mean that the winds are automatically covered under the Policy. The Policy provides coverage for winds "of unusual violence." *Schaffer v. Northern Assur. Co. Ltd.*, 177 S.W.2d 688 (Mo. App. 1944). The winds that were present during the storm were neither "unusual" or "violent," and accordingly, did not constitute a "windstorm." Therefore, Plaintiff's claim for damages is not a Covered Cause under the Policy, and Plaintiff's claim must fail as a matter of law.

### (c) The Wind did Not Cause the Collapse of the Marina.

Even in the event that the Court determines that the November 2006 winds constituted a "windstorm" under the Policy, Plaintiff still cannot establish that the "windstorm" caused the collapse of the marina. In order for Plaintiff to prevail on its claim for damages related to a "windstorm," it must prove that the windstorm was the dominant, direct and efficient cause of the collapse. *J. G Hahn v. M.F.A. Ins. Co.*, 616 S.W.2d 574 (Mo. App. 1981). It is not enough to claim that wind assisted in the collapse. The wind must have been the overriding cause of the damage. *Id.*

Here, there is no evidence which even remotely suggests that the wind was the dominant cause of the collapse. Damon Sagehorn, Defendant's expert who investigated the collapse concluded that the "dock system experienced failure during the ice and snow event" and that the "collapsed dock roofs failed due to poor maintenance coupled with the vertical load applied by weight of ice and snow." He further found that "there was no evidence of any high winds. Limbs, trash, tables, chairs and many other lighter items were in the original locations and had not been displaced by wind." *See* Exhibit F, Report Damon Sagehorn, attached to Defendant's Motion for Summary Judgment.

Plaintiff's own expert, James Newcomber, tacitly concedes that there was no evidence to prove that the November 2006 winds were the dominant cause. In his report, he states that "it

7

<u>cannot</u> be concluded that the collapse was caused solely by the frozen precipitation, or that it was caused solely by wind. It was the combined effect of the frozen precipitation and wind that led to the collapse of the covered boat docks." *See* Exhibit N, Report of James Newcomer, attached to Defendant's Motion for Summary Judgment. A finding that it was the "combined effect" of wind and ice fails, as a matter of law, to meet Plaintiff's burden of proving that the wind was the direct and dominant cause of the loss. *Id.*

Plaintiff concedes that ice and snow caused the collapse. Marina owner, Diane Krausse, while observing the layers of ice and snow covering the marina, stated that she "had never seen anything like this" in her 22 years at the marina. *See* Exhibit O, KSDK News Footage, attached hereto. Implicitly referring to the weight of the ice and snow, she further states that "the boats have gone down" and that a couple have "gone under water" as a result of "sinking down on their hoists." *Id.* The footage captured by KSDK of Mrs. Krausse and of the marina just days after the collapse, is both telling and admissible. (It is Defendant's position that the visual images are admissible as demonstrative evidence, that Mrs. Krausse's statements are admissible under Federal Rule 801, and the statements of Randy Jackson are admissible under Rule 803(1)). Additionally, photographs taken of the collapse further prove that the wind on the date of the storm was less than severe. As Mr. Sagehorn notes in his conclusions, "there was no evidence of any high winds. Limbs, trash, tables, chairs and many lighter items were in their original locations and had not been displaced by wind." *See* Exhibit F. This is clearly evidenced in photographs of traffic cones, lightweight plastic furniture and a sun umbrella which remained upright throughout the storm. *See* Exhibit P attached hereto. It is beyond logic for Plaintiff to claim that although the winds were not strong enough to displace these "light-weight objects," they were strong enough to blow the roofs off of the marina.

    **(d)**     **Hail did not cause the collapse of the Marina**

8

In what appears to be a throw away argument, in its Petition Plaintiff claims that "hail fell during the storm," but does not allege that hail caused or contributed to the collapse. Like many of the allegations contained in Plaintiff's Petition, there is no evidence to support the claim that hail fell during the storm. Likewise, there is no evidence which even remotely indicates that hail caused the collapse of the marina. The weather data collected by NOAA proves that between the dates of November 1, 2006, and November 30, 2006, "0 Hail event(s) were reported in St. Charles County, Missouri." *See* Exhibit L, Certified NOAA Meteorological Reports, attached to Defendant's Motion for Summary Judgment.

Plaintiff's Petition does not allege that hail caused or contributed to the collapse. Defendant suspects, however, that Plaintiff may attempt to manufacturer an argument alleging that hail contributed to the collapse. To prevail on such a claim, Plaintiff would have to prove that hail was the dominant, direct and efficient cause of the collapse. Because there is no evidence of this, any attempt by Plaintiff to argue the same should fail as a matter of law. *J. G Hahn v. M.F.A. Ins. Co.*, 616 S.W.2d at 574.

2. *Defendant Western Heritage was not VEXATIOUS in its denial of plaintiff's claim for property damage*

In addition to the Breach of Contract claim, Plaintiff alleges that Defendant Western Heritage's denial of coverage for Plaintiff's claim was vexatious, thereby entitling Plaintiff to recover additional damages under RSMo. § 375.420. *See* Petition. Plaintiff acknowledges that it first requested coverage on December 7, 2006, for alleged losses and damages it attributed to a November 2006 "ice and snow storm." It is further acknowledged that Western Heritage appointed an independent adjuster, Centurion Claims, to investigate the loss; that Western Heritage subsequently retained an engineering firm, Engineering Evaluations Inspections, Inc., to investigate the cause of that marina's collapse; and that on February 16, 2006, Western Heritage denied Plaintiff's claim based upon the investigation performed and reports prepared by

Centurion Claims and Engineering Evaluations Inspections, Inc. *See* Exhibit E and F, attached to Defendant's Motion for Summary Judgment. Significantly, Western Heritage's denial requested Two Branch to communicate any disagreement with this coverage position so that it could provide an adequate reply and/or reevaluation of the position if requested. *See* Exhibit B to Petition.

Approximately one month later, counsel retained by Plaintiff, Mary B. Schultz, first wrote to Defendant regarding Western Heritage's denial of coverage. *See* Exhibit H attached to Defendant's Motion for Summary Judgment. The subsequent exchange of correspondence between Ms. Schultz and Western Heritage documents the parties' disagreement concerning the cause of the damage identified in Plaintiff's Property Loss Notice. *See* Exhibit H through K attached to Defendant's Motion for Summary Judgment. It is undisputed, however, that Ms. Schultz never provided Defendant with a single expert's report contradicting the findings of Centurion Claims or Engineering Evaluations Inspections, Inc. before filing the present cause of action.

To establish a claim for vexatious refusal to pay, a plaintiff must prove that: (1) he had an insurance policy with the insurer; (2) the insured refused to pay; and (3) the insurer's refusal to pay was without reasonable cause or excuse. *Dhyne v. State Farm Fire & Cas. Cos.*, 188 S.W.3d 451, 457 (Mo. banc 2006). The test for a vexatious refusal claim is not the final resolution of the coverage issue but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage. *Wunsch v. Sun Life Assur. Co.*, 92 S.W.3d 146, 153 (Mo. App. W.D. 2002). There may be no vexatious refusal where the insurer has reasonable cause to believe and does believe that there is no liability under its policy and that it has a meritorious defense. *Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 42 (Mo. banc 1976). When there is an open question of law or

fact, an insurer may insist upon an judicial determination of those questions without being penalized. *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 109 (Mo. App. E.D. 2004); *Oliver v. Cameron Mut. Ins. Co.,* 866 S.W.2d 865, 870 (Mo. App. E.D. 1993).

Here, at the time Western Heritage initially denied coverage, Defendant had the reports of an independent adjuster and an engineer who investigated the collapse. Based upon Defendant's review of their investigations and findings, Western Heritage reasonably determined that its insurance policy afforded no coverage for Two Branch's alleged damages and losses. Moreover, Plaintiff's counsel never provided to Defendant's representatives the expert report repeatedly referenced in counsel's correspondence indicating that Plaintiff's claim might be covered by Defendant's insurance policy. Hence, Western Heritage could reasonably conclude that litigable issues existed with regard to coverage for the claims asserted in Plaintiff's Petition.

The record does not contain the requisite evidence of a vexatious or recalcitrant attitude on the part of Western Heritage at the time it denied coverage, or at any other time, and fails to establish a genuine issue of material fact regarding such an attitude. Western Heritage promptly investigated Plaintiff's claim when first reported and relied upon investigative reports in denying that claim. In light of Ms. Schultz's correspondence to Defendant, Western Heritage could reasonably expect Plaintiff and its counsel to produce the purported expert reports rather than accede to counsel's unsubstantiated arguments. Nevertheless, such reports were never produced until after suit was filed. Under such circumstances, summary judgment in Defendant's favor on the vexatious refusal claim is appropriate. *See generally Wood v. Safeco Ins. Co. of America,* 980 S.W.2d 43, 55 (Mo. App. E.D. 1998); *Hocker Oil Co. v. Parker-Phillips-Jackson, Inc.,* 997 S.W.2d 510, 523 (Mo. App. S.D. 1999).

In vexatious delay cases, the issue of reasonable cause for delay is determined on a case-by-case basis on the individual facts available to the insurer at the time it was called upon to

pay. It is only when the insurance company persists in its refusal to pay after becoming aware that it has no meritorious defense that it becomes liable for vexatious delay. *E.g. Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 76 (Mo. App. W.D. 1995). As previously observed, the test for a vexatious refusal claim is not the final resolution of the coverage issues, but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 387 (Mo. App. W.D. 1999).

Here, Western Heritage maintains a good faith belief and a meritorious defense to Plaintiff's claims. The existence of those reasonable grounds entitles Defendant to judgment as a matter of law. *E.g., Watters v. Travel Guard Int'l*, 136 S.W.3d at 108-10; *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d at 387; *Wunsch v. Sun Life Assur. Co., 92 S.W.3d at 153; Wood v. Safeco Ins. Co. of America*, 980 S.W.2d at 55. *See also Bickerton, Inc. v. American States Ins. Co.*, 898 S.W.2d 595, 602 (Mo. App. W.D. 1995) (finding that a dispute about coverage together with results of insurance company's investigation into loss defeated vexatious refusal to pay claim).

The evidence now before the Court demonstrates the reasonableness of Defendant Western Heritage's coverage position at the time of its initial denial, based upon the reports of Centurion Claims or Engineering Evaluations Inspections, Inc., as well as its subsequent rejection of the unsubstantiated arguments advanced by Plaintiff's counsel. Because the record does not establish that Western Heritage refused to pay Plaintiff' claim without reasonable cause or excuse, summary judgment should be granted in Defendant's favor on Plaintiff's claim for vexatious refusal damages. *See Schaffer v. Safeco Ins. Co.*, No. 4:05-CV-2408 CEJ (E.D. Mo. 01-03-2007).

ARMSTRONG TEASDALE LLP

BY /S/ Todd R. Nissenholtz

| | |
|---|---|
| Karen A. Baudendistel | #3844 |
| Todd R. Nissenholtz | #498694 |

One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 22, 2008, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following named counsel of record:

James H. Ferrick
Reiad M. Khouri
2000 Equitable Building
St. Louis, Missouri 63102
(314) 516-2689

/s/ Todd R. Nissenholtz