UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TWO BRANCH MARINA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07CV1017 CDP |
| | ) |
| WESTERN HERITAGE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

In November 2006, Plaintiff Two Branch Marina, Inc.'s docks were damaged during a storm. Two Branch filed a claim with defendant Western Heritage Insurance Company. After Western Heritage denied the claim, stating that the damages were not covered losses under Two Branch's policy, the marina brought this lawsuit alleging Missouri state law claims of breach of contract and vexatious refusal to pay. Western Heritage now seeks summary judgment on both claims. After a review of the record, I conclude that Western Heritage is entitled to summary judgment on the vexatious refusal claim, but that fact disputes remain with regard to the breach of contract claim.[1]

---

[1] Two Branch filed a motion to strike one of the exhibits filed in support of Western Heritage's motion for summary judgment on the breach of contract claim. Because Two Branch is entitled to summary judgment whether or not I consider this evidence, I will deny the motion. The question of whether the video will be admissible at trial will be decided at a later date.

## Background

From November 29, 2006 through December 1, 2006, Two Branch was hit by a storm, and the storm caused the marina's docks to be destroyed. At that time, Two Branch was covered by a insurance policy issued by Western Heritage for the period of February 23, 2006 to February 23, 2007. Two Branch had been covered by similar insurance policies since 2002 and had not submitted a claim previously under these policies. The 2006-2007 policy provided commercial property coverage for "direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss" as defined in the policy. Under the policy, a Covered Cause of Loss included:

> Windstorm or hail, but not including: (a) frost or cold weather; ice (other than hail), snow or sleet, whether driven by wind or not; (c) loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, sand or dust, whether driven by wind or not, unless the building structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

Under the policy, Western Heritage had an obligation to provide a notice to Two Branch within 15 days of a claim, stating whether Western Heritage would accept the claim, deny the claim, or need time to determine whether the claim should be accepted or denied. Once Western Heritage informed Two Branch that it would need time to investigate, it then had an obligation to send Two Branch written

notifications every 45 days regarding the status of the claim.

On December 7, 2006, Two Branch filed a property loss notice with Western Heritage, and on that same date, Western Heritage notified Two Branch that it would be investigating the claim. Two Branch's loss notice was drafted by an employee of Midwest Agency, LLC, Two Branch's insurance agent, and the notice indicated that the docks were damaged due to an "ice and snow storm." Also on December 7, Western Heritage hired Centurion Claims, an adjusting firm, to investigate the claim. One of the Centurion Claims adjusters, Larry Tinnell, informed Western Heritage that the majority of the damage in the area was due to ice. On December 8, 2006, an employee of Centurion Claims contacted the owner of Two Branch, John Kjar, and inspected the facility. On that same date, after inspecting the facility, the adjuster contacted Western Heritage and gave a report over the phone. The adjuster indicated that ice had caused the damage and that John Kjar had stated that "they never get wind due to the protection of the ground being higher than the docks." Kjar denies that he ever made this statement. The adjuster also indicated that he told Kjar at that time that there might not be coverage for a loss due to the lack of wind damage.

In early December 2006, Western Heritage also retained an engineering firm, Engineering Evaluations Inspections, Inc., to investigate the circumstances and

cause of the dock collapse. On December 12, 2006, an engineer from that engineering firm inspected the marina, and after the engineer's inspection, the adjuster contacted Western Heritage and informed it that all of the damages were directly related to the weight of ice and not from wind or hail. On January 3, 2007, the adjuster again called Western Heritage, informing it that the adjuster had received the preliminary engineer report.

On January 17, 2008, Western Heritage received a call from Diane Krause, Two Branch's Manager, regarding the status of the claim, and Western Heritage returned this call and advised her that Western Heritage was waiting on the adjuster's report. There is no indication that Western Heritage informed her of the preliminary results at that time. On January 19, Krause again called Western Heritage, and Western Heritage returned her call on that same day. Krause called again on February 8, and Western Heritage returned her call, leaving her a voice mail message. In that message, Western Heritage informed her that the adjuster was duplicating and resubmitting his report, and that once the report was received, Western Heritage would let Two Branch know the results.

On either February 12 or 13, Centurion Claims reported its findings. In the report, the adjuster stated that Kjar "indicated that the damage to boat slips was due directly to the weight of ice and snow." The adjuster also indicated that wind

damage was unlikely because the docks were situated "below the land area at the river bank," and the report indicates that "it is apparent that the loss in question is not covered under this policy as the weight of ice and snow is specifically excluded."

Engineering Evaluations' report set forth its findings and conclusions. The conclusions were:

> 1. There was no evidence of wind damage. There were no wind-displaced components of any type, structural or otherwise.
>
> 2. The collapsed dock roofs failed due to poor maintenance coupled with the vertical load applied by the weight of ice and snow. The rotted and undersized wood failed allowing the roofs to rotate generally as a unit. The poor welds failed on one set of docks and allowed the roof to rotate generally as a unit. The roofs failed in three separate compass directions. All the roofs failed in a pattern toward the harbor water side.
>
> 3. The non-collapsed docks were partially submerged by the weight of ice and snow.
>
> 4. Weather, aerial photo, and river map data is included as an appendix to this report. The weather data indicates that a wind event, of sufficient velocity to damage the docks, did not occur.

The report refers to the storm taking place on December 7, rather than the actual storm date of November 29-December 1.

At some point after the claim was filed, Western Heritage notified Two Branch that it would not renew the insurance policy. On February 14, 2007,

Western Heritage mailed Two Branch a notice of cancellation of the insurance policy, and the cancellation was effective February 23, 2007. On February 15, Western Heritage called Krause and left her a message asking her to call the insurance company back. On February 16, Western Heritage mailed Two Branch a letter explaining that it had concluded that the loss was not covered by the policy. This letter set out Western Heritage's reasons for denial and requested that Two Branch provide any additional information that might not have been considered within 30 days. Also, on February 16, a Western Heritage representative spoke with Krause, informed her of the engineer's findings and advised her that the loss would not be covered.

Thereafter, on March 15, 2007, an attorney for Two Branch, Mary Schultz, sent Western Heritage a letter, informing Western Heritage of her representation of Two Branch and stating, "I have been assured that without the wind, which was over 25 mph with gusts over 35 mph, that Two Branch's docks would have held." On April 5, 2007, Schultz sent a second letter. In this letter, she stated that the owner of Two Branch and a number of structural engineers had informally observed that "the addition of wind shears" caused the docks to fail. After receiving this second letter, Western Heritage sent Schultz a letter, reiterating its coverage policy and inviting her to provide expert reports and photographs for review and

consideration. Thereafter, on May 1, 2007, Two Branch filed this lawsuit.

In support of its motion, Western Heritage submitted weather data collected between January 2006 and October 2007 by the National Oceanic and Atmospheric Administration. The NOAA data from Lambert-St. Louis International Airport indicates average wind speeds, winds of five seconds or more, of 36 miles per hour for the ten months before November 30, 2006. The data also indicate that the average maximum wind gust at Lambert was 46.4 miles per hour and the average maximum sustained winds, winds of two minutes or more, was 35.2 miles per hour during that time period.

The NOAA data from Lambert from the late November time of the storm indicates that the highest maximum sustained wind speed at Lambert was 29 miles per hour, the highest wind gust was 44 miles per hour, and the average wind speed in November was 8.3 miles per hour. Further, the NOAA data indicated that no hail events were reported in St. Charles County in November 2006.

Krause and Kjar both submitted affidavits in support of Two Branch's opposition to the motion for summary judgment. Krause testified that, on November 30, 2006, the wind was strong, she could feel her car being pushed by the wind as she drove to Two Branch, and she observed substantial and forceful winds gusting throughout Two Branch's premises. Also, she stated that winds at

Two Branch are generally stronger than in town. She further testified that she observed hail falling on that day. Kjar testified that he observed hail falling and substantial and forceful winds on November 30.

Two Branch also submitted the affidavit of George Bonecutter, dockmaster at Two Branch, in support of its opposition to the summary judgment motion. Bonecutter testified that he observed hail and substantial and forceful winds on November 30, 2006.

Finally, the report of Two Branch's expert witness, James Newcomer, indicates that the damage to the docks was caused by the combination of frozen precipitation and wind.[2] In the report, he concludes, "It <u>cannot</u> be concluded that the collapse was caused solely by the frozen precipitation, or that it was caused solely by the wind. It was the <u>combined</u> effect of both frozen precipitation and wind that led to the collapse of the covered boat docks." (emphasis in original). Newcomer's report does not reference hail.

## **<u>Discussion</u>**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences

---

[2]Discovery in this case has not closed, and expert depositions have not been taken at this time. Therefore, I will refer to Two Branch's expert report in this order even though such a report would not generally be admitted into evidence at trial.

- 8 -

from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

    1.    <u>Breach of Contract Claim</u>

Under Missouri law, in order to prevail on its breach of breach of contract claim, Two Branch must establish that (1) Western Heritage issued a policy to Two Branch covering loss due to hail or windstorms, (2) the docks were damaged by hail or windstorms, and (3) the policy was in force on the date of such loss. *See Hampton v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 65107, at *3 (Mo. Ct. App. Jan. 8, 2008); *see also Travers v. Universal Fire & Cas. Ins. Co.*, 34 S.W.3d 156, 160 (Mo. Ct. App. 2000). In this case, the first and third elements are not in

dispute. Therefore, the question before me is whether Two Branch can establish that the docks were damaged by hail or windstorms.³

Under Missouri law, the term windstorm means "a wind of unusual violence." *Brown v. Pennsylvania Fire Ins. Co.*, 263 S.W.2d 893, 897 (Mo. Ct. App. 1954). Still, "*policies must be construed to cover a windstorm of any force and turbulence.*" *Id.* (emphasis in original) (citation omitted). If an insurer wishes to limit its liability to damages from storms of a certain velocity or duration, it must explicitly so state in its policy. *Id*. The issue of whether the windstorm caused the damages is a question of fact. *Id*.

Missouri's definition of a windstorm comes from *Schaeffer v. Northen Assur. Co., Ltd.*, 177 S.W.2d 688, 691 (Mo. Ct. App. 1944). In that case, the weather bureau's measurements of the winds showed a highest velocity of 40 miles per hour on one day, 31 miles per hour on the next day, and 14 miles per hour on the day the roof failed. Additionally, the plaintiff presented evidence of cracking noises coming from the roof during the entire three day period before the final collapse. Ultimately, the court held that the issue of whether there was a windstorm that

---

³Two Branch has presented witness statements regarding the presence of both hail and wind on the days leading up to the collapse. Western Heritage argues that Two Branch should be barred from raising the hail arguments in this motion because such evidence was not previously disclosed or referenced in the complaint. I will not reach the hail issue because I believe that Two Branch's case survives on the windstorm issue.

resulted in the damage to the insured building was a question of fact for the jury. *Id*. at 692.

In *Brown*, the Missouri Court of Appeals held there was sufficient evidence to present the case to a jury where the facts presented were similar to the facts in this case. 263 S.W.2d at 896-97. In that case, several witnesses testified that a windstorm had occurred and described the windstorm. *Id*. at 895. The defendant insurance company presented evidence from the United States Weather Bureau from several miles away from the damaged building that the maximum wind velocity was 26 miles per hour and that the average wind speed for the hour in question was 17 miles per hour. The defendant also presented evidence that winds are classified as 'moderate' from 13-18 miles per hour. After considering all of this evidence, including the witness statements, the court found, "We consider the foregoing statements and others hereinbefore outlined as sufficient evidence from which a jury could find that there was a wind of more than ordinary velocity, possessing the aspects of a storm and that it was a 'windstorm' within the meaning of the policy." *Id*. at 897.

Additionally, the court found that there was sufficient evidence of causation. A contractor and an adjuster testified for the defendant. The contractor testified that the damage could have been caused by a windstorm but he believed it was caused

by the vibrations of big trucks on the street. The adjuster testified that in his opinion, there was no windstorm on the date in question, and that the damage was caused by "a progressive process of deterioration climaxed by some sort of disturbance, possibly a passing truck or bus." *Id*. at 896.

Similarly, in this case, witnesses have testified regarding the strength of the wind. Additionally, the weather data from Lambert shows wind gusts as high as 44 miles per hour, a speed that is greater than the wind speed recognized in *Schaeffer* as violent. The weather data provided by Western Heritage was taken several miles away from Two Branch, and it is possible that the winds at the marina were much stronger than those at Lambert. Further, the plaintiff's expert testified that the combined effect of frozen precipitation and wind led to the collapse. Like the court in *Brown*, I conclude that Two Branch has submitted sufficient evidence from which a jury could find that there was wind of more than ordinary velocity and that such a storm was the proximate cause of the damage to Two Branch's docks. As there is a genuine dispute of fact, I will deny the motion for summary judgment on the contract claim

2. <u>Vexatious Refusal Claim</u>

Under Missouri law, to establish its vexatious refusal to pay claim, Two Branch must prove that Western Heritage's refusal to pay was willful and without

reasonable cause or excuse.  Mo. Rev. Stat. § 375.420; *see also Columbia Mut. Ins. Co. v. Epstein*, 200 S.W.3d 547, 552 (Mo. Ct. App. 2006).  Western Heritage asserts that Two Branch cannot establish that it refusal to pay was unreasonable.  I agree.

Under Missouri law, there is "no vexatious refusal where the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense." *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 109 (Mo. Ct. App. 2004).  Additionally, "a question of reasonableness is a question of fact for the jury rather than a question of law for the court." *Id*.  Reasonableness is determined based on the information available to the insurer at the time of the denial.  Still, reasonableness can be determined as a matter of law based on undisputed facts.  *Watters*, 136 S.W.3d at 109.  The purpose of Missouri's vexatious refusal statute is "to correct the evil of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of the claim." *Id*. at 110.

A triable issue does not bar a plaintiff's recovery for vexatious refusal if the plaintiff can show that the insurer's attitude was vexatious and recalcitrant. *Hensley v. Shelter Mut. Ins. Co.*, 210 S.W.3d 455, 465 (Mo. Ct. App. 2007).  Vexatious refusal claims have been recognized where (1) the refusal is based upon a suspicion, rather than a reasonable inference of established facts, *Laster v. State*

*Farm Fire and Cas. Co.*, 693 S.W.2d 195 (Mo. Ct. App. 1985); (2) unfavorable evidence is concealed, *Fields v. Metro. Life Ins. Co.*, 119 S.W.2d 463 (Mo. Ct. App. 1938); (3) there is no explanation for the refusal to pay, *Allen v. State Farm Mut. Auto. Ins. Co.*, 753 S.W.2d 616 (Mo. Ct. App. 1988); (4) there is an extended period of time with no activity after the insurer completed the investigation, *Victor v. Manhattan Life Ins. Co.*, 772 S.W.2d 826 (Mo. Ct. App. 1989); (5) the defense asserted was not available for that type of claim, *Dewitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700 (Mo. 1984); (6) the insurer refused to pay a portion of the claim that was uncontested, *Hester v. American Family Mut. Ins. Co.*, 733 S.W.2d 1 (Mo. Ct. App. 1987); (7) the insurer delayed significantly in contacting the insured and performed an inadequate investigation, *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 2007 WL 2990459, at *12-13 (Mo. Ct. App. Oct. 16, 2007); (8) the insurer delayed paying for a loss because it was awaiting the possibility of recovery of stolen property, *Laster v. State Farm Fire and Cas. Co.*, 693 S.W.2d 195 (Mo. Ct. App. 1985); (9) the insurer treated two co-insureds differently, *Russell v. Farmers & Merchants Ins. Co.*, 834 S.W.2d 209 (Mo. Ct. App. 1992); (10) the insurer continued to rely on a previously unsuccessful defense, *Still v. Travelers Indemnity Co.*, 374 S.W.2d 95 (Mo. 1963); and (11) the insurer relied on an inadequate expert opinion, *Pace Properties v. American Mfrs*, 918 S.W.2d 883 (Mo. Ct. App. 1996).

As in *Watters v. Travel Guard*, the evidence here establishes that the insurer investigated the claim. *See Watters*, 136 S.W.3d at 109. It hired an adjuster and a structural engineer to determine the cause of the loss. There is no evidence that either the adjuster or the engineer were unqualified or that their opinions were unfounded. Western Heritage also stated its grounds for denial.

Additionally, Western Heritage offered to review any evidence or engineer reports that Two Branch might have had supporting its position on the cause of loss. While Western Heritage did not notify Two Branch in writing that it would need additional time beyond the initial 45 days to investigate the claim, Western Heritage was in constant communication with Two Branch. It returned calls from representatives of Two Branch on January 17, January 19, and February 8. There is no evidence that Two Branch ever provided Western Heritage with the statements of Krause, Kjar, Bonecutter, or any expert before filing this suit.

Further, Missouri cases have addressed very similar issues in the past. *See Schaeffer v. Northern Assur. Co., Ltd.*, 179 S.W.2d 923 (Mo. Ct. App. 1944); *see also Schaeffer v. Northern Assur. Co., Ltd.*, 177 S.W.2d 688 (Mo. Ct. App. 1944). In both of those cases, the claimant argued that a windstorm caused the loss and the insurance claims were covered losses. *Schaeffer*, 179 S.W.2d at 925; *Schaeffer*, 177 S.W.2d at 692. Although the courts held that the breach of contract claims could go

forward, as in this case, the courts also held that the insurers were entitled to summary judgment on the vexatious refusal claims because the insurer's denial was not unreasonable given the facts of each case. *Schaeffer*, 179 S.W.2d at 926; *Schaeffer*, 177 S.W.2d at 693.

Missouri courts have recognized that an insurer acts reasonably when it relies on a statement of the insured in a proof of loss. *See Rossman v. G.F.C. Corp. of Missouri*, 596 S.W.2d 469 (Mo. Ct. App. 1980). The proof of loss received by Western Heritage indicated that the damage was due to ice and snow. Regardless of whether the proof of loss was drafted by Two Branch or its insurance agent, Western Heritage's reliance on it was not unreasonable.

Two Branch relies on *Russell v. Farmers & Merchants Ins. Co.*, 834 S.W.2d at 221-23 and *Wood v. Foremost Ins. Co.*, 477 F.3d 1027, 1028 (8th Cir. 2007). The situation in this case is easily distinguishable from those cases. As compared to *Russell*, there is no evidence that Western Heritage treated Two Branch differently than any other insured, and particularly no evidence that it treated Two Branch differently than a co-insured. 834 S.W.2d at 222-23. Additionally, in *Wood*, there was no dispute regarding the coverage of the policy in question, and the insurer had already paid under the policy. The plaintiff's vexatious refusal claim was based on a dispute of fact regarding when the insurer received the insured's damages

estimate and proof of loss and a dispute of fact concerning the insurer's response to the damages estimate. 477 F.3d at 1027-28. There are no such disputes in this case.

As a result, I conclude that Western Heritage's denial of Two Branch's claim was not vexatious as a matter of law. Because Western Heritage negated Two Branch's required element of proof that Western Heritage acted without reasonable cause in denying coverage, Western Heritage is entitled to summary judgment on the vexatious refusal claim. However, because fact disputes remain as to the breach of contract claim, I will deny summary judgment on that claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Western Heritage Insurance Company's motion for summary judgment [#31] is granted in part and denied in part. Plaintiff Two Branch Marina's vexatious refusal claim is dismissed, but plaintiff's breach of contract claim remains pending.

**IT IS FURTHER ORDERED** that plaintiff Two Branch Marina's motion to strike [#37] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of July, 2008.